## 67053. HELLENIC LINES, LTD. v. BROWN.

BANKE, Judge.

The plaintiff, a longshoreman, injured his knee while loading cargo onto a vessel owned by the defendant. He subsequently brought this negligence action against the defendant pursuant to § 5 (b) of the Longshoremen's and Harbor Workers' Compensation Act, 33 USC § 905 (b), which allows a longshoreman injured "by the negligence of a vessel" to "bring an action against such vessel" in addition to recovering statutory compensation from his employer, i.e., the stevedore. A jury awarded the plaintiff $398,000 in damages, and the defendant shipowner filed this appeal from the denial of its motion for judgment notwithstanding the verdict or, in the alternative, for a new trial.

At the time the injury occurred, the plaintiff was helping to stack

bales of wood pulp (i.e., paper) which were being lowered into the ship's hold. The only fixed access to the work area was by a vertical ladder running from the deck to the bottom of the hold. However, this ladder had been covered up by bales of pulp as a normal consequence of the loading operation and was no longer accessible. As the plaintiff was jumping from one tier of the stacked cargo to the next lower tier, a distance of 5 to 8 feet, his foot caught in the space between two of the bales of pulp, causing him to wrench his knee. His claim against the defendant is based on a contention that the injury would not have occurred had the hold been furnished with a "Jacob's ladder," i.e., a portable rope ladder with wooden rungs.

It is undisputed that federal labor regulations applicable to the longshoring industry placed the responsibility for supplying portable ladders needed by longshoremen during loading operations upon the stevedore rather than upon the ship or its crew; however, there was testimony that the normal practice and custom was for the long-shoremen to obtain such ladders from the ship's crew if they were needed. There was also testimony that the leader of the plaintiff's longshoremen's crew had asked the ship's mate to furnish a Jacob's ladder for use in the hold and that the ship's mate had promised to do so. *Held:*

1. In Scindia Steam Navigation Co. v. De Los Santos, 451 U. S. 156, 172 (101 SC 1614, 68 LE2d 1) (1981), the Supreme Court held that, under amendments to the Longshoremen's and Harbor Workers' Compensation Act enacted in 1972, "the shipowner has no general duty by way of supervision or inspection to exercise reasonable care to discover dangerous conditions that develop within the confines of the cargo operations that are assigned to the stevedore." However, the Court went on to hold that "there are circumstances in which the shipowner has a duty to act where the danger to longshoremen arises from the malfunctioning of the ship's gear being used in the cargo operations." Id. at 175.

The injury at issue in Scindia allegedly occurred as the result of a faulty braking mechanism in a winch which was part of the ship's gear and which was being used by the longshoremen to lower cargo into the ship's hold. The Court ruled that although the danger from the faulty mechanism was obvious, the shipowner was not entitled to summary judgment, reasoning as follows: "[I]t is quite possible, it seems to us, that [the stevedore's] judgment in [continuing to use the winch] was so obviously improvident that [the shipowner], if it knew of the defect and that [the stevedore] was continuing to use it, should have realized the winch presented an unreasonable risk of harm to the longshoremen, and that in such circumstances it had a duty to intervene and repair the ship's winch. The same would be true if the

defect existed from the outset and [the shipowner] must be deemed to have been aware of its condition." Id. at 175-176. The Court concluded its analysis somewhat cryptically, stating: "If [the owner] was aware that the winch was malfunctioning to some degree, and if there was a jury issue as to whether it was so unsafe that the stevedore should have ceased using it, could the jury also have found that the winch was so clearly unsafe that Scindia should have intervened and stopped the loading operation until the winch was serviceable? We raise these questions but do not answer them, since they are for the trial court in the first instance and since neither the trial nor appellate courts need deal with them unless there is sufficient evidence to submit to the jury either that the shipowner was aware of sufficient facts to conclude that the winch was not in proper order, or that the winch was defective when cargo operations began and that Scindia was chargeable with knowledge of its condition." Id. at 178.

Unlike Scindia, the case before us does not involve malfunctioning or defective equipment provided by the shipowner but rather a claim that the gear or equipment provided by the shipowner was inadequate in that it did not include a portable ladder for use in the hold. Assuming arguendo that this can be considered a defective condition chargeable to the shipowner within the meaning of Scindia, we do not believe it can be considered a "clearly unsafe" condition for which the shipowner may be held liable. It is apparent that all of the longshoremen working in the hold routinely moved about by climbing or jumping from one tier of the pulp bales to another and that neither they nor anyone else perceived any unreasonable danger in this. This is precisely the type of activity which falls within the particular area of expertise of the longshoremen and stevedore as opposed to the shipowner.

In reaching this conclusion, we do not mean to imply that the defendant in this case is insulated from liability because the plaintiff continued to work without insisting upon a ladder, for one thing the Supreme Court did make clear in Scindia is that "the defense of assumption of risk is unavailable in 905 (b) litigation." Id. at 176, fn. 22. What we hold is that the conduct of the plaintiff and the other longshoremen in jumping from one tier of pulp to another was not so obviously and unreasonably dangerous that the shipowner was under a duty to step in and stop them until portable ladders were made available. "It is the exceptional case, under Scindia, in which the shipowner remains liable as a 'deep pocket' defendant, when it turns the vessel over to the stevedore for loading. This was not one of the exceptional cases. To permit a jury to reimpose, under the guise of negligence, back-up liability for the stevedore's failure to provide adequate safety devices would be to repeal the [1972] amendments

and restore the pre-1972 practice which allowed longshoremen and their employers to pass the costs of loading and unloading accidents back to the ship under the rubric of unseaworthiness." Bandeen v. United Carriers (Panama), Inc., 712 F2d 1336, 1341 (9th Cir. 1983). Accord, Melanson v. Caribou Reefers, Ltd., 667 F2d 213 (1st Cir. 1981); cf. Hill v. Texaco, Inc., 674 F2d 447 (5th Cir. 1982); Helaire v. Mobil Oil Co., 709 F2d 1031 (5th Cir. 1983).

2. The defendant's remaining enumerations of error are rendered moot by the foregoing.

*Judgment reversed. Deen, P. J., and Carley, J., concur.*

DECIDED OCTOBER 19, 1983 —
REHEARING DENIED OCTOBER 31, 1983 —

*George H. Chamlee,* for appellant.
*Ralph R. Lorberbaum, Edward T. Brennan,* for appellee.